UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL B. WHARTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:11-cv-01222-TWP-DKL |
| PROTEUS PROS, LLC, doing business as MR. HANDYMAN, | ) ) ) ) |
| Defendant. | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
FOLLOWING BENCH TRIAL ON JUNE 23, 2014**

This matter was before the Court for a bench trial on June 23, 2014, on Plaintiff Michael B. Wharton's ("Wharton") *Frampton* claim against Defendant Proteus Pros, LLC, d/b/a Mr. Handyman ("Mr. Handyman"), alleging unlawful termination in retaliation for Wharton filing a worker's compensation claim. Having heard testimony and considering the exhibits and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

**I.    FINDINGS OF FACT**

Mr. Handyman is a business headquartered in Indianapolis, Marion County, Indiana. Wharton was employed by Mr. Handyman as a service technician/handyman from April 10, 2011 to August 4, 2011. Mr. Handyman paid Wharton $700.00 per week from his start date of April 10, 2011 to the pay period ending July 23, 2011. Payments for the final two pay periods ending July 30, 2011 and August 6, 2011 were for the prorated amounts of $420.00 and $560.00, respectively. Wharton's job entailed traveling to the homes of Mr. Handyman customers and performing repairs and home improvement services. James Furrer ("Furrer") is the owner of Mr.

Handyman and the sole member of Proteus Pros, LLC. Furrer hired Wharton, had operational control over the business, and is the person who made employment decisions about Mr. Handyman's employees.

On July 14, 2011, Wharton was injured while working for Mr. Handyman at a customer's home. He fell from a ladder and injured his right knee. Wharton reported his work-related injury to Mr. Handyman from the job site. Mr. Handyman's office manager, Mary Harper ("Ms. Harper"), drove to the injury site and took Wharton to an immediate care medical facility for an examination. Initially, Wharton was placed under medical restrictions which stated, "Do not walk if it is causing pain. No pivot with right foot planted. Restrictions in place for 2 weeks after return. Patient is cleared to return with limitations and restrictions." (Exhibit 4, p. 2.) Mr. Handyman continued to send Wharton to perform his regular handyman job duties with these medical restrictions. On several occasions, Wharton continued to go to job sites to work alone.

Wharton's right knee injury continued to cause him pain, and he went to Furrer to further discuss the injury and to seek treatment through worker's compensation. Mr. Handyman sent Wharton back to the immediate care medical facility for a follow up visit on July 28, 2011. During this second examination, Wharton's medical restrictions were greatly increased to state, "Work restrictions until patient is evaluated and cleared by an orthopedist: No standing longer than 1 hour per 8 hour shift. No climbing ladders and stairs. No squatting or working on knees." (Exhibit 4, p. 3.) Additionally, the medical note indicated, "The patient needs further orthopedic evaluation to rule out cartilage damage vs. ligament tear." (*Id.*). Despite these restrictions, Wharton continued to work at customers' homes. Mr. Handyman gave Wharton office work to perform the last one to two days of his employment.

The orthopedic surgeon chosen by Mr. Handyman's worker's compensation administrator was OrthoIndy. Wharton was sent to OrthoIndy for an examination on July 29, 2011, and was subsequently further restricted to "sit down work only." (Exhibit 4, p. 4). At the following medical appointment on August 4, 2011, Furrer instructed Ms. Harper to attend the appointment with Wharton. Ms. Harper accompanied Wharton into the examination room. Wharton did not verbally object to Ms. Harper accompanying him into the room, nor did he expressly invite or consent to her being present. During the examination, Ms. Harper answered some of the doctor's questions regarding whether Mr. Handyman was honoring the medical restrictions placed on Wharton's work. Wharton informed the physician that Mr. Handyman had been requiring him to go out on jobs and do his regular work. The physician advised Wharton that he had a meniscus tear in his right knee and was being scheduled for surgery on August 18, 2011.

Immediately following the August 4, 2011 appointment, Wharton and Ms. Harper returned to the Mr. Handyman office. Furrer then instructed Ms. Harper to drive with Wharton to his home in the Mr. Handyman van that was assigned to him, and Furrer followed in his vehicle. At his home, Wharton was instructed to clean out the van, return all Mr. Handyman equipment and material, and turn over the keys to the van. Ms. Harper then drove away with the van. Wharton confronted Furrer and asked if he was being fired, but Furrer denied that he was terminating him. Approximately one week later, Wharton received a letter from Mr. Handyman backdated to August 4, 2011, advising him that he was terminated for "cause," but the letter provided no further explanation of the reason for termination.

Wharton underwent his scheduled knee surgery on August 18, 2011. Mr. Handyman reported to its worker's compensation administrator that it had fired Wharton, which caused the worker's compensation administrator to take the position that it did not have to pay Wharton total

temporary disability benefits during the period he recovered from his surgery until he was released to work again on October 7, 2011.

Two former customers testified that Wharton made mistakes on work that he completed for them. Wharton damaged the door frame in Sandy Tavel's home, and did poor work on a bathroom tile job for Jesse Samm. (Exhibits 308-314.) Both of these jobs were completed sometime prior to Wharton's July 14, 2011 injury; however, he was never written up or disciplined for these jobs prior to his termination. Mr. Handyman also continued to send Wharton out to jobs unaccompanied following the work for these two customers, both before and after his injury.

Wharton admitted that he misrepresented whether he had been previously terminated by another employer on his job application. (Exhibit 304, 306, 307.) He admitted that he had been discharged from employment by a previous employer, Handyman Matters, even though he answered "no" to the question of whether he had ever been discharged by another employer on his paper application. (Exhibit 307.) This issue was never brought to Wharton's attention prior to his termination.

Wharton had never been disciplined by Mr. Handyman prior to his termination, nor had he been warned that his job was in jeopardy. Mr. Handyman had a practice of issuing formal written discipline to technicians about whom Mr. Handyman customers made complaints regarding work performance. Mr. Handyman had issued formal written discipline to other employees, but never issued one to Wharton. Mr. Handyman has no e-mails or other communications criticizing Wharton for his work performance or discussing any complaints from customers. The only communications regarding Wharton concerned his knee injury.

## II. CONCLUSIONS OF LAW

Based upon the above and foregoing Findings of Fact, the Court now makes the following

Conclusions of Law:

**A.   *Frampton* Liability**

Wharton has stated a claim of retaliatory discharge against Mr. Handyman for terminating him because he made a worker's compensation claim, which is also known as a "*Frampton* claim" under Indiana law. *Frampton v. Central Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). When an at-will employee is discharged solely for exercising a statutorily conferred right, his employer is liable under *Frampton*. *Id.* at 428. "The employee must present evidence that directly or indirectly supplies the necessary inference of causation between the filing of a claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext." *Whirlpool Corp. v. Vanderburgh Cnty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 758 (Ind. Ct. App. 2007).

There are three steps for proving liability under a retaliatory discharge claim. First, the employee must prove, by a preponderance of the evidence, a *prima facie* case of discrimination. Like other retaliation causes of action, employees must establish a *prima facie* case by showing that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 213 (Ind. Ct. App. 2005). Once a plaintiff proves his *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. Finally, if the employer carries that burden, the employee can prove, by a preponderance of the evidence, that the reason offered by the employer is a pretext. *Purdy*, 835 N.E.2d at 213 (citing *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002)) (additional citations omitted).

The Court concludes that Wharton has met his burden of proving his *prima facie* case. First, Wharton did engage in a statutorily protected activity by filing a worker's compensation claim following his July 14, 2011 injury. Second, he suffered an adverse employment action when he was terminated by Mr. Handyman on August 4, 2011. Finally, he has shown that there is a causal link between his act of filing a worker's compensation claim and his termination. "[C]ausation may be inferred from the rapidity and proximity in time between the employee's filing for benefits and the discharge, or from evidence that the employer's proffered reason for the discharge is 'patently inconsistent with the evidence before the court.'" *Mack v. Great Dane Trailers*, 308 F.3d 776, 784 (7th Cir. 2002) (quoting *Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999)) (additional quotations and citations omitted). Wharton was terminated on the same day Mr. Handyman found out that his injury would require surgery; he was taken almost immediately from his doctor's appointment to his home in order to clean out his work van and return all tools and equipment belonging to Mr. Handyman, and his termination was made effective as of that day. There is also evidence that Mr. Handyman then informed its worker's compensation administrator that Wharton had been terminated so that it would not have to pay his claim. The immediacy of Wharton's termination by Mr. Handyman upon learning the extent of his injuries, as well as the fact that he was terminated less than two weeks after filing a worker's compensation claim, support an inference that there was a causal link between the filing of Wharton's worker's compensation claim and his termination. In addition, the attempt to deny coverage for what was undoubtedly going to be a more costly course of treatment than originally anticipated, in addition to the suspicious timing, casts doubt on Mr. Handyman's stated reason for Wharton's discharge. *See Mack*, 308 F.3d at 785 ("Indiana courts have held . . . that more remote timing may, when coupled with other sufficient evidence, support an inference of retaliation.").

The Court further concludes that the reasons proffered by Mr. Handyman for Wharton's termination are pretextual. A plaintiff may prove pretext by showing (1) the employer's stated reason has no basis in fact; (2) although based on fact, the stated reasons were not the actual reasons for his discharge; or (3) the stated reasons were insufficient to warrant the discharge. *Whirlpool Corp.*, 875 N.E.2d at 758. Mr. Handyman asserts that the reason Wharton was terminated was because of poor work quality done for two customers prior to his injury, as well as misrepresentations on his employment application. There is no evidence that these alleged reasons were considered prior to Wharton's termination. Even though these incidents occurred months prior to Wharton's injury in July 2011, Wharton was never disciplined, despite the fact that Mr. Handyman had a practice of issuing formal written discipline to technicians about whom Mr. Handyman customers made complaints regarding work performance. There was also no discussion of these issues among his supervisors regarding these issues; all of Mr. Handyman's e-mail communications concerning Wharton discuss the severity of his injury, not shortcomings in his performance. (Exhibit 6.) Mr. Handyman also continued to send Wharton out on customer jobs for several months after the mistakes were made at Ms. Tavel's and Mr. Samms' homes. There is essentially no contemporaneous evidence that would indicate that the reasons put forth by Mr. Handyman were the true reasons for Wharton's termination at the time it occurred, and all communications regarding Wharton during the relevant time period were focused upon his injury and worker's compensation claim. The purported reasons for Wharton's termination were not intervening causes such that they would support a finding that the reasons were not pretext. *Cf. Caskey v. Colgate–Palmolive Co.*, 535 F.3d 585, 594 (7th Cir. 2008) (finding the plaintiff unable to make a causal connection even though she was disciplined and terminated shortly after her injury where there were several intervening events leading to her termination).

The Court finds there is a sufficient showing that, although based in fact, the poor work done for two customers and the alleged misrepresentation on Wharton's employment application were not the actual reasons for his discharge. After assessing the credibility of the witnesses and the evidence, the Court finds that the reasons given for Wharton's termination are an attempt to justify his discharge after the fact, which, even if factually true, will not justify an otherwise unlawful termination. *See Futrell v. J.I. Case*, 38 F.3d 342, 349 (7th Cir. 1994) ("An employer's proffered explanation for a discharge does not prevail simply because it contains a true factual predicate; there must also be a causal link between the explanation and the discharge.").

The Court concludes, as a matter of law, that Mr. Handyman terminated Wharton in retaliation for making a worker's compensation claim against the company. Wharton's report of his work injury and the initiation of his worker's compensation claim against Mr. Handyman are the "but-for" cause of his termination. The evidence supports a finding that, but for the fact that Wharton was injured and made his worker's compensation claim, his employment would not have been terminated. The Court further concludes that the reasons given by Mr. Handyman for Wharton's termination are untrue, and are pretext for unlawful retaliation.

**B.     Damages**

The Court concludes that Wharton is entitled to compensatory damages for Mr. Handyman's retaliatory discharge. In a *Frampton* claim, compensatory damages "may include pecuniary losses and future losses which will result from the defendant's wrong, as well as damages for bodily injury and mental anguish." *Remington Freight Lines, Inc. v. Larkey*, 644 N.E.2d 931, 942 (Ind. Ct. App. 1994), as clarified on denial of reh'g (Apr. 4, 1995). If the employee is able to find comparable employment, damages may be recovered for the period in which he is unemployed. *Id.* Wharton was unemployed for a period of thirteen weeks following

his October 7, 2011 release to return to work by the OrthoIndy surgeon, until some time in January 2012. During his employment with Mr. Handyman, Wharton was paid $700.00 per week. (Exhibit 1.) The Court therefore finds that Wharton is entitled to $9,100.00 in compensatory damages for lost wages resulting from Mr. Handyman's unlawful conduct.

In addition, the Court finds that Mr. Handyman's conduct was intentional and willful, justifying an award of punitive damages. Recognizing that Mr. Handyman is a small company the Court awards punitive damages in the amount of $1,000.00.

### III. CONCLUSION

For the reasons set forth above in the Court's Findings of Fact and Conclusions of Law, the Court finds that Plaintiff, Michael B. Wharton, has established the liability of Defendant Proteus Pros, LLC for the tort of retaliatory discharge. The Court hereby awards to Wharton the sum of Ten Thousand One Hundred Dollars ($10,100.00), representing a compensatory damage award of $9,100.00 and a punitive damage award of $1,000.00.

**SO ORDERED.**

Date: 9/9/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert Peter Kondras, Jr.
HUNT HASSLER LORENZ & KONDRAS LLP
kondras@huntlawfirm.net

Steven Sams
STEVEN SAMS, P.C.
stevensamslaw@att.net